IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MALORY JONES                                                                                    PLAINTIFF

V.                            CASE NO. 3:16-CV-00111 JTK

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION                                                                                  DEFENDANT

## ORDER

**I.   Introduction:**

Plaintiff, Malory Jones, applied for disability benefits on January 23, 2014, alleging a disability onset date of January 20, 2014. (Tr. at 87). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 96). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Jones has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

The ALJ found that Jones had not engaged in substantial gainful activity since the alleged onset date of January 20, 2014. (Tr. at 89). The ALJ found, at Step Two of the sequential five-step analysis, that Jones had the following severe impairments: status-post laminectomy with ongoing lumbar spondylosis, obesity, and osteoarthritis. *Id.*

At Step Three, the ALJ determined that Jones's impairments did not meet or equal a listed

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

impairment. (Tr. at 91). Before proceeding to Step Four, the ALJ determined that Jones had the residual functional capacity ("RFC") to perform sedentary work except that he can lift and carry 10 pounds occasionally and less than 10 pounds frequently; can stand and/or walk in 30-minute intervals for two hours in an eight-hour workday; can sit in 30-minute intervals for six hours in an eight-hour workday; can push and/or pull 10 pounds occasionally and less than 10 pounds frequently; and should avoid stooping when in a standing position. *Id*. Next, the ALJ found that Jones was unable to perform any past relevant work. (Tr. at 94). Finally, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Jones's age, education, work experience and RFC, Jones was capable of performing work in the national economy. (Tr. at 95). Based on that determination, the ALJ held that Jones was not disabled. *Id.*

### III. Discussion:

    A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Jones's Arguments on Appeal

Jones argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ afforded improper weight to the opinions of Jones's treating physician, Dr. Terry Lichtor, M.D., and that the ALJ erred in his credibility analysis. For the following reasons, the Court finds that the ALJ's decision is not supported by substantial evidence, and therefore, remand is proper.

Jones had back problems that required three surgeries. Dr. Lichtor evaluated Jones on October 4, 2011 and found that he walked with a limp and had some pain on straight-leg raising. (Tr. at 394-398). An MRI indicated a small herniated disc at the L4-L5 level. *Id.* Dr. Lichtor performed a microdiscectomy on October 19, 2011. *Id.* The back pain seemed to improve but by March 2012 Jones was reporting increased pain. (Tr. at 472-474).

Jones saw a rheumatologist for numbness and shooting pain in October 2013. (Tr. at 452-455). He said that the surgery did not fix his back pain and that medications were not helping. *Id.* In January 2014 Jones complained of "scalding, burning pain in his lower right leg and foot." (Tr. at 447-450). Dr. Andrea Read, D.O., referred him to a neurosurgeon.

Dr. Lichtor found on January 23, 2014 that Jones walked with a limp and showed mild to moderate weakness of dorsiflexion and plantarflexion on the right side with diminished pinprick sensation. (Tr. at 388). A lumbar MRI showed a large recurrent herniated disc at L4-5 on the right with severe compression of the right L5 nerve root. (Tr. at 388, 426). An MRI of the thoracic spine showed extensive degenerative changes. (Tr. at 429). Dr. Lichtor recommended a second surgery but noted that results may be guarded due to the past surgery in the same place. (Tr. at 388). On March 21, 2014, Dr. Lichtor performed a repeat microdiscectomy on Jones's

3

lumbar spine. (Tr. at 593-600). Dr. Lichtor indicated that Jones was totally incapacitated for the time being. (Tr. at 571).

In spite of the second surgery, Jones still had back pain and an MRI performed on April 24, 2014 showed recurrent right-sided herniation at L4-5 with severe compression of the thecal sac and right S1 nerve root. (Tr. at 588). Dr. Lichtor opined that Jones was still disabled and prescribed Hydrocodone. (Tr. at 528) On June 9, 2014, Dr. Lichtor indicated Jones would undergo a third discectomy in July. (Tr. at 585). He said Jones's work status would depend on how he progressed following surgery. *Id*. Dr. Lichtor wrote that narcotic pain medication would prevent him from performing job functions safely. *Id.*

On July 7, 2014, Dr. Lichtor performed an L4 laminectomy and third microdiscectomy. (Tr. at 576-582). On July 22, 2014, Jones returned with moderate residual right upper leg pain and Dr. Lichtor prescribed Hydrocodone, stating that he was disabled. (Tr. at 575). An MRI performed on August 14, 2014 showed extensive enhancement of scar tissue and arachnoiditis. (Tr. at 574). On August 21, 2014, Dr. Lichtor continued to classify Jones as disabled. (Tr. at 572).

Jones saw a pain specialist, Dr. Calin Savu, M.D., on September 8, 2014 and exhibited stiff posture, slight forward flexion, antalgic and wide-based gait, decreased ROM in the lumbar spine, and positive right straight-leg raise. (Tr. 607-611). Dr. Savu diagnosed chronic pain, lumbar facet arthropathy, lumbar degenerative disease, arachnoiditis, radiculopathy, and lumbar spondylosis. *Id.* Over the next six months, Dr. Savu administered steroid injections, medial branch blocks, sacroiliac joint injections, and radiofrequency neurolysis. (Tr. at 607-625). On April 14, 2015, Jones indicated that these treatments were not helping. (Tr. at 74). An MRI

4

performed on May 19, 2015 showed clumping of the nerve roots consistent with arachnoiditis. (Tr. at 34).

The ALJ dismissed the multiple opinions of Dr. Lichtor that Jones was disabled, suggesting that the medical record did not support such conclusions. A treating physician is a physician who has provided a claimant with medical treatment or evaluation and had an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902. A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). The opinion of a treating physician, however, does not automatically control; nor does it eliminate the need to evaluate the record as a whole. *Id*. An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Dr. Lichtor was Jones's main treating doctor for his back problems for over three years. He performed three surgeries on him and relied upon objective testing in recommending those surgeries. MRIs revealed significant problems in Jones's back even after all of the surgeries. The ALJ erred when he discounted the well-supported opinion of Dr. Lichtor in favor of non-examining consultants who only had records prior to the second surgery available to them. Those consultants, who suggested a sedentary RFC, did not have a treating relationship with Jones or any specialty in the area in question. (Tr. at 134, 146). Any conflict apparent to the ALJ between the examining and non-examining physicians could have been resolved by further development of the

5

record at the very least. *Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002) (instead of developing record from treating physician, ALJ "improperly relied on the report of a state consultant who did not examine" the claimant); see 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). The ALJ did not afford proper weight to the well-supported opinion of Dr. Lichtor, and thus remand is proper.

In addition, the ALJ did not properly weigh the credibility factors when evaluating Jones's subjective complaints. An ALJ has a statutory duty "to assess the credibility of the claimant and other witnesses."[2] *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). 20 C.F.R. § 404.1529. The ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations (the ALJ here cited to Jones's "unpersuasive appearance and demeanor" at the hearing, which is not only vague, but also an insufficient reason to discredit him).

The ALJ in this case exaggerated Jones's daily activities, stating that he goes out alone, drives, cooks, and shops every two weeks. (Tr. at 94). Jones actually testified that he only walks

---

[2] Social Security Ruling 16-3p, 2016 SSR LEXIS 4, removed the word "credibility" from the analysis of a claimant's subjective complaints. It became effective on March 28, 2016, but the underlying analysis still incorporates the same factors discussed in *Polaski* and requires the ALJ to make a determination based on all evidence in the record. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017).

to get the newspaper each day, and otherwise alternates between sitting and lying down in order to get comfortable. (Tr. at 117). He said when he goes shopping with his son, he sits in his truck while his son goes inside. (Tr. at 118). These activities do not equate with the ability to perform daily work tasks. The ability to do sedentary work "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982).

Moreover, the ALJ did not seem to consider that Jones sought out all possible treatment for his back. He undertook physical therapy, saw a pain management specialist who performed a variety of modalities to mitigate pain, took narcotic medication, and had three surgeries, all with limited success. A consistent diagnosis of chronic pain, coupled with a long history of pain management and drug therapy, supports Jones's allegations of disabling pain. *Cox v. Apfel,* 160 F.3d 1203, 1208 (8th Cir. 1998). The ALJ did not properly evaluate the *Polaski* factors; his analysis that Jones's complaints were not entirely credible is not supported by the record as a whole.

**IV. Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ improperly discounted the opinion of Dr. Terry Lichtor and he failed to adequately consider the *Polaski* factors in his credibility analysis. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 11th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE